# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

| | |
|---|---|
| Case No. | 8:24-cr-00126-JVS |
| Date | June 09, 2025 |

Present: The Honorable **James V. Selna, U.S. District Court Judge**

Interpreter  N/A

| Elsa Vargas | Sharon Seffens | Nandor Kiss, Rosalind Wang, Tara Vavere |
|---|---|---|
| *Deputy Clerk* | *Court Reporter.* | *Assistant U.S. Attorney* |

| U.S.A. v. Defendant(s): | Present | Cust. | Bond | Attorneys for Defendants: | Present | App. | Ret. |
|---|---|---|---|---|---|---|---|
| **Andrew Hoang Do** | X | | X | Paul Meyer, Eliot Krieger | | X | X |

**Proceedings:** SENTENCING - Non-Evidentiary

Cause is called for hearing with the defendant, his counsel, and counsel for the Government present. The Court's tentative sentencing memorandum is issued. Counsel make their arguments on the Court's tentative sentencing memorandum. The Court sentences the defendant (Refer to separate Judgment and Commitment Order) in accordance with its sentencing memorandum (attached hereto).

The Court sets a Restitution hearing for Monday, August 11, 2025 at 9:00 a.m. Briefs of no more than 25 pages due by July 14, 2025.

cc:    USPPO

                                                                              :    30
                                                      Initials of Deputy Clerk   eva

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

United States v. Do, Case No. SACR 24-126 JVS

Sentencing Memorandum

This matter is before the Court for sentencing defendant Andrew Hoang Do ("Do") on his plea to Count 1 of the Information for violation of 18 U.S.C. § 371, conspiracy to commit bribery concerning a program receiving federal funds. In arriving at a reasonable sentence as instructed by United States v. Booker, 543 U.S. 220 (2005), the Court has taken into consideration the United States Sentencing Commission Guidelines, the policies of the Sentencing Reform Act of 1984, 18 U.S.C. § 3553(a), and the specific facts of this case. The Court has reviewed the Presentence Report ("PSR") and the parties' submissions.[1] As set forth below, the Court finds that a sentence of 60 months imprisonment with a waiver of fine represents a reasonable sentence in light of all of these factors.

    1.  Sentencing Guidelines.[2] The Court adopts the Guidelines analysis of the PSR.

    1.1.  Offense Level. The Court concurs that the conspiracy guideline looks to the underlying conduct. U.S.S.G. § 2X1.1(a). The applicable substantive guideline is Section 2C1.1(a)(1) which provides a base offense level of 14. Several enhancements are applicable: a 2-level enhancement because there were multiple bribes, U.S.S.G. § 2C1.1(b)(2); a 14-level enhancement based on the total amount of bribes, U.S.S.G. § 2C1.1(b)(2); U.S.S.G. § 2B1.1(b)(1)(H); and a 4-level enhancement because Do was a "high-level decision maker," U.S.S.G. § U.S.S.G. § 2C1.1(b)(3). Do is entitled to a 3-level reduction for accepting responsibility. U.S.S.G. §§ 3E1.1(a), (b). He is also entitled to a "zero points" reduction of 2 levels. U.S.S.G. § 4C1.1(a). The Court finds that the record establishes by a preponderance of the evidence the basis for each enhancement and each reduction. The adjusted offense level is

---

[1] The Court permitted the Government to file a much-belated Supplemental Sentencing Position. (Docket Nos. 40, 41.) Do responded. (Docket No. 42.) The parties' discussions do not materially assist the Court's final sentencing decision, and for that reason, the Court does not address the particulars of those filings, many of which are repetitive at least in part.

[2] Although the Court considers the Guidelines first, the Court is mindful that the Guidelines are only the starting point in crafting a reasonable sentence. Gall v. United States, 552 U.S. 38, 49 (2007); United States v. Carty, 520 F.3d 984, 991 (9th Cir. 2008); United States v. Cantrell, 433 F.3d 1269, 1280 (9th Cir. 2006). There is no presumption in this Court that a Guidelines sentence should apply. Nelson v. United States, 555 U.S. 350, 352 (2008) (*per curiam*); Rita v. United States, 551 U.S. 338, 351 (2007); Carty, 520 F.3d at 994.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

29.³

While not disputing the Probation Officer's Guidelines calculation under Section 2C1.1, other than to claim that the Guidelines are overstated, Do asserts that Section 2C1.2 "more accurately reflects the offenses in this case." (Defendant's Position re: Sentencing, p. 8.) The Court disagrees.

That Section is entitled "Offering, Giving, Soliciting, or Receiving a Gratuity," and provides in relevant part:

>(a) Base Offense Level:
>    (1) 11, if the defendant was a public official; or
>    (2) 9, otherwise.
>(b) Specific Offense Characteristics
>    (1) If the offense involved <u>more than one gratuity</u>, increase by 2 levels.
>    (2) If the value of the gratuity exceeded $6,500, increase by the number of levels from the table in § 2B1.1 (Theft, Property Destruction, and Fraud) corresponding to that amount.
>    (3) If the offense involved an elected public official or any public official in <u>a high-level decision-making or sensitive position</u>, increase by 4 levels. If the resulting offense level is less than level 15, increase to level 15.

(U.S.S.G. § 2C1.2; emphasis supplied.)

There are two flaws in Do's assertion that the appropriate sentence under 2C1.2 is 33 months, the low end at level 20.

First, Do ignores two enhancements under 2C1.2. Four levels are added under 2C1.2(b)(3) because Do was a high-level decision maker. Moreover, because there were multiple "gratuities," an additional two levels are added. The correct application of Section § 2C1.2 would result at level 25: 63-78 months. Here, as well, the statutory maximum of 60 months would override the Guidelines.

Second, as the Probation Officer points out, Section 2C1.2 might be plausible where bribery is charged directly, but the Guidelines' correlation table makes it clear that where

---

³While the Guidelines do not seem to consider the consequence of harm to third parties, there is not doubt that his conduct harmed Do's vulnerable constituents. <u>See</u> U.S.S.G. § 3A1.1(b).

the charged offense is conspiracy, and bribery is only the object of the conspiracy, the correct Guideline is 2C1.1. (Addendum to PSR. pp. 1-2.)

Moreover, Do specifically admitted in the Plea Agreement that "the statement of facts is sufficient to support a plea of guilty to the charge described in the agreement." (Plea Agreement ¶ 13.) He cannot change the admitted facts after the fact. The gap between the approval of contracts and the payment of the bribes does not change this. (See Defendant's Sentencing Position, pp. 10-13.) A bribe is no less a bribe if the giver of the bribe waits for the solicited corrupt performance before paying.

1.2. Criminal History. The Court concurs that the defendant's Criminal History Category is I, based on the absence of any Criminal History points.

1.3. Departures. The Court acknowledges that it has discretion to depart from the sentence which results from an application of the Guidelines. The Court finds no basis for a departure in this case.

1.4. Conclusion. The Court finds that proper application of the Guidelines calls for a sentence of imprisonment for 60 months (statutory maximum) and a fine of $30,000 to $250,000.[4]

2. Sentencing Reform Act. In arriving at a reasonable sentence, the Court considers the following factors outlined in the Sentencing Reform Act.

2.1. Nature of Circumstances of the Offense and History and Characteristics of Defendant. As the Supreme Court observed in Gall v. United States, 552 U.S. 38, 52 (2007) (internal quotation marks deleted), "the sentencing judge consider[s] every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue."

*The Offense Conduct.*

As part of the Congressional relief package which Congress adopted in response to the economic harms inflicted by the COVID-19 pandemic, the Government made $1 billion in grants to Orange County. Among other things, each of five supervisors, including Do who was chair of the Board of Supervisors, was allowed to designate contract recipients in his or her supervisorial district for payments up to $1,000,000.

---

[4] But for the statutory cap, the Guidelines range would be 87–108 months

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

More generally, one of the recipients was Viet American Society ("VAS") which had been set up by co-conspirator Peter Pham ("Pham") to provide meals to the elderly and infirm. Ultimately, VAS received $10 million in funds for the Nutritional Gap Program and the construction of a Vietnam War Memorial in Mile Square Park.[5]

Do steered more than $10 million in contracts to VAS. VAS made monthly payments to Co-Conspirator No. 2 of $108,000. That firm in turn began sending funds to various contractors, and via the contractors to Do's daughters. One daughter received $338,000 and the other received $100,000. Through Co-Conspirtor #1, Rhianon Do received $8,000 per month; the total payments amounted to $224,000. The payment to Do's daughters were bribes to Do to ensure that he would continue to steer contracts to VAS. A relatively small amount of the diverted funds went to Do. (PSR, ¶ 25.)

Only about 15 % of the VAS food contracts ($1.4 million was actually spent for that purpose out of $9.3 million. The ultimate victims were the poor, elderly, and disabled of Orange County.

The Government characterizes his conduct as "democratic sabotage." (Government's Sentencing Position, p. 2.)[6]

*Personal History.*

Do was born in Vietnam, and grew up in war-torn times. Although his needs were met, the family suffered poverty. There was much death around him and a high number to death casualties.

When he was 12 years-old, his family was displaced, and resided in a number of refugee camps before coming to the United States when he was 13 years-old. He had difficulties assimilating, and faced discrimination when he came to California.

Do is married, and has two daughters who were beneficiaries of the bribery scheme

His entry into politics strained his relationship with his parents and his siblings

---

[5]In some cases, funds also came from State sources.

[6]The Government notes that in 2017, Do was found by the California Fair Political Practices Commission to be involved in a "play-to-pay" scheme while serving on the board of CalOptima which administered a health care system for low income children, adults and seniors with disabilities. (Government Sentencing Position, p. 12.) The Court does not rely on those events in adopting the present sentence.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

Do attended undergraduate school at the University of California at Davis where he received his bachelor's degree. He earned his law degree at Hastings School of Law in San Francisco.

He was a member of the Bar, but is no longer eligible to practice as result of the present conviction.

For more than ten years, he was employed as an Orange County Supervisor, earning $180,000 a year. He was a practicing attorney while serving as a supervisor. Prior to winning office, he was Chief of Staff for the Board of Supervisors.

Do has a net worth of $1,532,423, and a negative monthly cash flow of approximately $8,400. (PSR, ¶ 92.) He has the ability to pay a fine.

2.2. <u>Need for Sentence to Reflect Seriousness of Offense, to Promote Respect for Law, and to Provide Just Punishment.</u> The Court finds that the Guidelines analysis has taken into account this factor.[7]

2.3. <u>Need to Afford Adequate Deterrence of Criminal Conduct.</u> The Court finds that the Guidelines analysis has taken into account this factor.

2.4. <u>Need to Protect the Public.</u> The Court finds that the Guidelines analysis has taken into account this factor.

2.5. <u>Need to Provide Defendant Individualized Service Needs.</u> This is not a factor in this case.

2.6. <u>Kinds of Sentences Available.</u> Under the terms of the advisory Guidelines, a sentence falling within Zone D must include a term on imprisonment equivalent to the low end of the Guidelines range (60 months). U.S.S.G. § 5C1.1(f). The Court, of course, acknowledges that this directive, as well as all others in the Guidelines, is merely advisory.

2.7 <u>Facts of the Case.</u> There are no additional facts which the Guidelines analysis and the other factors in Section 3553(a) have not taken into account in type or degree.

---

[7] The Court does not mean that the Guidelines analysis overrides the factors in Section 3553(a), but rather that the Court will consider the same facts only once unless the facts have additional or different significance under a Section 3553(a) analysis or render the case atypical. The Court has noted where this is the case. <u>United States v. Mix</u>, 450 F.3d 375, 382 (9th Cir. 2006).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

3. <u>Victim Statement.</u>  The Board of Supervisors for the County of Orange ("Board") has filed a Victim Impact Statement ("Statement"). (Docket No. 31.)  The Board emphasizes the betrayal of public trust which it asserts "cannot be overstated." (Statement, p. 3; pagination per ECM.)  As the Board notes, that breach translated into direct harm to Do's constituents who were to be the beneficiaries of the food program in extraordinarily difficult times.  The Board also notes that Do's conduct has damaged the public's trust in the Board and its ability to carry out it activities.  (<u>Id.</u>)

The Board points out other crimes for which Do could have been prosecuted, many of which carry sentences far greater than the 60 month term which the conspiracy count carries under 18 U.S.C. § 371.  (<u>Id.</u>, p. 6.)  It urges the Court to impose restitution in the amount of $10.3 million, its direct losses. (<u>Id.</u>, p. 6.)  The clear implication of the Board's Statement is that the Plea Agreement was the result of a charge bargaining.  The Plea Agreement acknowledges this.  (Plea Agreement, ¶ 5(d).)

In urging the Court to impose that statutory maximum of 60 months, the Board attaches a Board Resolution which summarizes the sentences in recent public corruption cases and the amounts of loss.  (<u>Id.</u>, pp. 7-8.)  The Court finds that recitation of those cases provides helpful perspective.  The present sentence is in alignment with those cases.

2.7. <u>Sufficiency of Punishment.</u>  The Court finds that a sentence which is the equivalent of a Guidelines sentence is sufficient but no more than necessary to meet the goals of the Sentencing Reform Act, including specifically recognition of the seriousness of the crime and deterrence.  <u>Kimbrough v. United States</u>, 552 U.S. 85, 110-11 (2007).

The Court acknowledges his difficult youth and difficulties upon coming to the United States, and has taken them into account.  However, the magnitude and sophistication of the scheme far outweigh his private travails and good works.  Moreover, as the facts came to light in the press, he labeled the stories as "a political hit job," and called for the firing of journalists who were putting out the truth.  (<u>See</u> Government's Sentencing Position, Exs. 7, 8.)

3. <u>Standard Terms of Supervised Release.</u>  The Court finds that the Proposed Judgment in the Probation Officer's Disclosure Letter in advance of sentencing meets the requirement of <u>United States v. Montoya</u>, 82 F.4th 640 (9th Cir. 2023 (*en banc*), for presentence disclosure of all non-statutorily required standard terms of supervised release.  (Disclosure Letter, Docket No. 23, Feb. 11, 2025, Condition No.1; <u>see also</u> PSR, Appendix.)

4. <u>Restitution.</u>  Restitution is clearly due here, and will be determined at a later date.  The Plea Agreement puts restitution between $550,000-735,000; others, including the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CRIMINAL MINUTES - GENERAL**

Board, put the loss much higher. However, given the potential magnitude of restitution, Do does not have the ability to pay a fine as well.

        4. <u>Conclusion.</u> In setting this sentence, the Court has taken into account that it has discretion under both the Guidelines and <u>Booker</u>. As noted above, the Court has not exercised its discretion under the Guidelines or <u>Booker</u>, but in adopting the present sentence, the Court is mindful that whether a sentence falls within or without the Guideline range, the Court's ultimate decision is a reflection of its discretion. The Court finds that taking into account the analysis mandated by <u>Booker</u>, a sentence of 60 months imprisonment with a waiver of fine represents a reasonable sentence.